In the brief that we submitted, I think we could have made a stronger argument for the issue, the first issue on the due process, the deportation proceeding. And what I want to say is that when the immigration judge told Mr. Martinez and the other aliens that the law had changed, that waiver was no longer available, she was wrong, but she didn't know it. What made it wrong was St. Cyr. When St. Cyr came down and said that ARERA is not retroactive, it wasn't a change in the law, it was an interpretation of the law. And so now... Judge Goldberg Counsel, without regard to whether or not we should issue a ruling that essentially tells immigration judges that they're going to have to give fuller explanations of the intricacies of waiver law, how do you respond to the transcript that shows that your client agreed that he didn't want to pursue the waiver and wanted to be deported, rather than take more time to get a lawyer and complete the form? Justice Alito The answer that Mr. Martinez gave to the district court, actually to one of the questions of the — of counsel regarding why he did that, why Mr. Martinez acquiesced, he — Mr. Martinez said, and it's on the record, I was going to get deported anyway. The — what we're arguing is that he said that with the understanding that there was no — no waiver of deportation available anymore. In fact, Judge — Immigration Judge Suniga told him the — there is no more waiver of deportation, but you can apply, you can do this, but the law has changed. That was bad advice. She didn't know it. But that was wrong. The fact of the case is, isn't this the case where she said to him, look, you can apply for the waiver and I'm going to deny it based on the present state of the law, but then you can appeal it. And if the law changes while it's on appeal, then you'll get the benefit of it. She did tell him that. That's right. She did. And it was after that that he says, well, this is the court. I don't want to pursue that. Right. But the fact that — How does that constitute an effective waiver? Because, like Arietta says, when in the first instance, the information regarding a waiver of deportation is incorrect, then the information, any advice regarding appeal of that waiver sort of carries that. So that was incorrect. That seemed to me to be an accurate statement of the law at that time. But at that time — And a recognition that the law might change — That's right. On appeal. So what's erroneous about what she said? What I'm saying is that it's kind of a weird situation. When St. Cyr was decided, that made the immigration judge's advice wrong. So it's as if you could go back in time and now say that advice was wrong when she said you cannot apply, there are no more waivers. That advice was wrong because the Supreme Court said there were still waivers at that time. And anybody who was told — either not told about a waiver at all, like I think was Arietta, or given incorrect information — Isn't that subsumed within her statement that the law may change while your case is on appeal and then you would get the benefit? It isn't what's subsumed? The subsequent decision by the Supreme Court in St. Cyr? In other words, maybe there's another way to ask Judge Tolman's question. It seems to me that this immigration judge specifically was advising your client that appellate courts could alter the decision that was being made, and that there was an avenue there, a possible avenue for relief through an appeal. That's right. But like we've argued, she was sort of talking out of both sides of her mouth. She was saying, this can happen, but I'm going to deny it. There are no more waivers available. If you apply, I'm going to deny it. The law is that I may be wrong. This is what I think the law is. This is what I'm going to do. But you have the right to appeal, and those folks up there may tell me that I'm wrong, and you could win if you just take it to that next step. That's right. But at the same time that she was saying that, Your Honor, she was also sort of discouraging by again saying, well, you filed your application for waiver, I'm going to deny it. And I doubt, Your Honor, that these people who were at that deportation here would, based on what Judge Suniga told them, have any understanding of what an appeal is. It wasn't explained. But counsel, aren't we bound by the standard of review of a district court factual finding that there was a knowing waiver here? In other words, we would have to find Judge Marsha's ruling to be clearly erroneous on that key fact in order to grant you the relief that you seek. Well, I don't. Okay, you're reviewing a motion to dismiss here, and I'm thinking that's de novo review. But it took testimony in the form of reviewing the transcript of the proceedings and made a determination on the issue of waiver, finding that your client had waived. I understand that, yeah. But you're arguing to us that we should disregard completely what Judge Marsh found and rule de novo as to whether or not your client entered a free and voluntary waiver. And I don't know that we can do that on appeal. I think what we're arguing, Your Honor, is that once the immigration judge gave incorrect advice regarding the unavailability of deportation. She gave incorrect advice. Pardon? She did not say the law is X. End of story. I think you've got to be careful when you say gave incorrect advice. She gave correct advice with regard to what her opinion was at the time and what she was going to do as the immigration judge at the time. Well, she didn't say what her opinion was. She said that's what the law was. Well, because she was an immigration judge, her opinion amounted to the same thing. She was expressing her view of the law and letting your client know what her view of the law was. And at the same time said, you can appeal. Indeed, said that at least a couple of times. So I pause when you say give incorrect advice. I think I know what you mean, but it's not entirely fair to describe what she gave as incorrect advice. End of story. She described how the process would work. The only alternative I see is telling the immigration judge never to say anything. And you can't go wrong that way. But I don't think that serves the interests of the people before her. Like I said, Your Honor, she didn't know she was giving incorrect advice. That turned out to be later. Your Honor, I know time's running out, but could I go on to the next issue? You may, but you're going to go into what might otherwise be rebuttal time, but you're certainly free to do that. I time myself for rebuttal, but let me see if I can run through it real quick. On the third level for acceptance, the only, I'd just like to add to the argument that we briefed that Mr. Martinez was stopped by Portland police for erratic driving. That's not what he went to court for. What he went to court for was the immigration charge. And he, and you'll see in the PSR, it's inferred that Mr. Martinez provided all of the elements, admitted to all of the elements of the charges when he met with the INS agent the next day after he was arrested. At that point, he believes that the third level was locked in. You see what I'm saying? It follows right, let's start again. The immigration judge confirmed it. And then on the other issue, the law has just recently changed. I realized that on the 201.2, the only thing I would say on that is that Judge Fletcher made the argument in Montero-Cisneros on dissent. And I know that's not authority, but. Well, it is if we find the dissent persuasive. Oh, okay. Figure out a way to distinguish the case that she dissented from. But other than that. Okay. She read that, the law said at that time, the guideline comment that revocation sentences are not counted for the time of incarceration. In addition to that, we're arguing that revocation that these cases, Montero-Cisneros and Jimenez and the other cases are state probation, which is totally different than supervised release in the federal context. And your honor, one more thing is I'm not sure I need leave, but I would ask leave to submit another rule 28 J letter to you because two additional cases came down on the first issue of the immigration issue. You may, you may, you may do that. The clerk will give you a form for doing that today. Okay. No argument, just the citations. Right. All right. Thank you. Thank you. May it please the court. Kent Robinson appearing for the United States. The legal issue posed by defendant's first argument is the adequacy of the colloquy between the immigration judge and the defendant. I think there are two prongs to that argument. First is the one that has been the subject of some debate this morning. And the government's position is, I think, echoed by the questions from each of the members of the panel, namely that the immigration judge correctly described the law to the defendant at the time she explained to him his options. It was a correct statement at that point to say that she was going to deny his request for waiver. It was equally correct to say that there was some chance that that would be overturned on appeal. And in fact, the judge didn't merely reference appeal of the ruling with this case. She mentioned that that the first principle, namely that waiver would not be available to a defendant in this circumstance, was already being reviewed on appeal, and that if that was reversed during dependency of his proceeding, he would benefit from it. So in fact, I think he got a precisely correct statement of the law. The second question, I suppose, is a broader one of whether or not the waiver colloquy here was adequate. Factually, the district court already found it was adequate. Thus, the only question for this court is. Is that a legal conclusion that we would review de novo? I think it's a mixed question, Your Honor. I think there are obviously factual elements here as well as legal elements. Factually, the court clearly concluded that the defendant understood his rights and knowing the waiver. There remains a legal issue that the court could address de novo, and that is, what is the extent of the colloquy that the court should engage in, the immigration judge should engage in? And on that subject, I would argue that the colloquy here was completely adequate. We can contrast it to the sort of colloquy that is required of a district judge when a defendant is trying to plead guilty. There, the court is required to have a searching inquiry into a variety of different  The searching nature of that inquiry is required because in the Rule 11 context, the defendant is waiving important constitutional rights. In the immigration context, it's an entirely different matter. The defendant was waiving a statutory right to seek discretionary relief. In that context, I think it's entirely sufficient for the immigration judge to simply advise him that he has the right to seek such a waiver and inquire whether or not he wants to exercise that right. I think the better analogy really would be to a law enforcement officer on the street who's asking a defendant post-arrest whether or not he wants to waive his Miranda rights. He's asked if he wants to remain silent, and the yes or no answer to that is pretty much taken as an adequate waiver. The law enforcement officer on the street isn't required to engage in an extensive colloquy explaining to a potential defendant all the ramifications of the right-how he exercises it one way or the other. You lost me with your metaphor. I thought you were arguing that there's a due process distinction between a criminal proceeding where a right to a jury trial and to summon witnesses is inherent in a plea of guilty and a civil deportation proceeding where an alien is being advised as to statutory right to seek a discretionary decision by the attorney general. Then you give me a metaphor that says we ought to go back to the criminal arena and look at a Fifth Amendment Miranda warning, and I don't see the distinction you're urging on. I agree it's an imperfect analogy, but I think the Court will agree with me that in that Fifth Amendment context, the rights a defendant is waiving are much more important than the statutory rights present in the immigration judge context. I don't know if we would agree with you or not, but do we have to for you to win? No, you wouldn't have to agree with me, because my point is that the sort of waiver that occurs in the Fifth Amendment context that I was talking about, that analogous context, is the equivalent of what happened here. I'm just trying to draw analogies to other areas of case law involving waivers that I think we're all familiar with in addressing the question whether the colloquy here was adequate. Before your time runs out, address the acceptance of responsibility argument. Yes, Your Honor. In order to obtain the third level of acceptance of responsibility under the guidelines, there's a two-prong analysis set forth in the guidelines. The first is whether or not the defendant in effect confessed or voluntarily admitted his involvement in the offense. That just didn't happen in this case, and the district court so found. Number one, at the time of his arrest by the Portland police officers, he provided false information with respect to his own identity. Defense counsel today has argued that implicit in a paragraph in the PSR is some admission by the defendant to INS agents. That simply isn't true. The defendant was not interviewed by the INS when they found him in custody. So the first prong fails. The second prong is whether or not the defendant timely notified authorities of his intent to plead guilty. That, too, did not happen in this case. The defendant notified the court and authorities of his intent to plead guilty the day before the trial was set in this case. Again, this is a matter uniquely in the discretion of the district court. The district court in this case exercised its discretion not to grant that third level after hearing the defendant's testimony in the pretrial matters, and I think that's an exercise of discretion that should be upheld. Is that change in the sentencing guidelines the one that was enacted to acknowledge the fast track? No, Your Honor. That's a different? That's a much more recent amendment to the guidelines, and the guideline I've just been referring to is the one that was in effect at the time of the sentencing in this case. Thank you. Thank you. You have exceeded your time, but we'll give you one minute for rebuttal. I just wanted to point out to the court the PSR paragraphs five and seven is where you will find that the INS agent found Mr. Martinez in the jail in Portland, and then confirmed certain facts, and what we're arguing is the inference is that he met with him there, and he verified Mr. Martinez had been deported, reentered illegally. But we've got a finding by the district court that he provided false identification. Right, and what we're... Doesn't that override whatever the PSR says? What we're arguing on that is no. That was to Portland Police. That was on an issue of... He was stopped for erratic driving. He was in charge with that. If he would have told the police officer his real name, that police officer wouldn't have done anything to enhance the charge of illegal reentry. Mr. Martinez was going to be interviewed by an INS agent in the jail no matter what. And the federal government, they charged him with the 1326 violation, and Mr. Martinez's admissions, or the government's... So the fact that he falsely identified himself to the first law enforcement officer who happened to affect his arrest is irrelevant for purposes of acceptance of responsibility now? I would say yes, especially since the next day after, and the timeliness is important in this context. The next day after the arrest, he confirmed. It was confirmed. What is it? All right. Thank you, counsel. Thank you, Your Honor. Your case just argued is submitted. And we will turn to Rice v. Orr, Metalurgical.
judges: Graber, Tallman, Clifton